Peter M. de Jonge, UT 7185
Jed H. Hansen, UT 10679
Eric W. Westerberg, UT 12712
**THORPE, NORTH & WESTERN, LLP**
8180 South 700 East, Suite 350
Sandy, Utah 84070
Telephone: (801) 566-6633
Facsimile: (801) 566-0750

*Attorneys for Plaintiff,*
*Canyon Ridge Resources, LLC dba Transamerican Medical Imaging*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Canyon Ridge Resources, LLC, dba Transamerican Medical Imaging, a Utah limited liability company,<br><br>         Plaintiff,<br><br>v.<br><br>Syk Technologies, LLC, a Utah limited liability company,<br><br>         Defendant. | **COMPLAINT FOR DECLARATORY JUDGMENT WITH JURY DEMAND**<br><br>Civil Case No. 2:15-cv-00541<br>Judge Dustin B. Pead |

Plaintiff Canyon Ridge Resources, LLC dba Transamerica Medical Imaging ("TMI") ("Plaintiff"), by and through its counsel, hereby files this Declaratory Complaint with Jury Demand against Defendant Syk Technologies, LLC ("Syk").

### COMPLAINT

TMI complains and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1.     TMI is a Utah limited liability company having a principal place of business at 965 West 325 North, Lindon, Utah 84042.

2. Upon information and belief, Syk is a Utah limited liability company with registered address of 3301 Thanksgiving Way, Lehi, Utah 84043.

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1367, and 1338.

4. Plaintiff brings this action under Title 35, United States Code §§ 1 et seq. and under the Federal Declaratory Judgment Statute, Title 28, United States Code §§2201, 2202 and Utah common law.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1338 and 35 U.S.C. §§ 1 et seq. including, without limitation, 35 U.S.C. §§101 and 271.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391.

7. Upon information and belief, this Court has general personal jurisdiction over the Syk since its contacts with the state of Utah are substantial, continuous, and systematic.

8. Upon information and belief, this Court also has specific personal jurisdiction over Syk as Syk's acts have caused damage to TMI in the state of Utah.

**GENERAL ALLEGATIONS**

9. TMI is a full service electronics design and manufacturing company that specializes in the design and manufacture of medical equipment.  Robert Woodward ("Bob Woodward") is the president and owner of TMI and a shareholder in a company known as Genosys, Inc.

10. Upon information and belief, Genosys, Inc. ("Genosys") is a Utah corporation that is in the business of developing nitric oxide generation systems.

11. In June of 2012, TMI was approached by Randy Miller, a director, shareholder, and chief technology officer of Genosys, with a rudimentary design for the manufacture of a nitric oxide analyzer and delivery system ("First Generation NO System").   The First Generation NO

System was made of an aluminum body and contained rudimentary electronics to control pharmaceutical gas flow to patients.

12. TMI manufactured a proto-type of the First Generation NO System at the request of Randy Miller and provided that proto-type to Mr. Miller sometime in October of 2013.

13. On or about October of 2013, the First Generation NO System proto-type was presented to Praxair, a pharmaceutical gas delivery company, in an effort to secure a contract to provide additional analyzer systems to Praxair. Unfortunately, Genosys was unable to commercialize the First Generation NO System because the rudimentary design failed to meet Praxair's quality standards and suffered from other design flaws.

14. In December of 2013, Randy Miller and Bob Woodward discussed the feasibility of making a new NO analyzer that cured the previous design flaws. Genosys, however, lacked funds to pay TMI for design and development work. Accordingly, Bob Woodward and Randy Miller began discussing an arrangement whereby TMI would have the exclusive right to Genosys technology if TMI would develop a new NO system curing all of the previous flaws.

15. Based on Randy Miller's representations and the expectation that an acceptable agreement would be finalized, Bob Woodward began a complete redesign of a NO system ("Second Generation NO System").

16. In early 2014, Bob Woodward was approached by Mark Kendall, an associate of Sy Kimball, the owner of Syk. Mark Kendall alleged that Genosys was being mismanaged and asked for Bob Woodward's support in removing Randy Miller from the management of Genosys and "buying out" all of the Genosys shareholders for a value significantly lower than their original investment. Mark Kendall indicated that if TMI would cooperate with Sy Kimball, TMI would be well compensated. Bob Woodward declined Mark Kendall's offer.

17.     Days after Mark Kendall's visit to TMI's office, Bob Woodward was invited to meet with Sy Kimball his house to further discuss his offer. Bob Woodward again declined Sy Kimball's offer.

18.     Despite Sy Kimball's claim that Genosys was being mismanaged and his desire to oust its management, Bob Woodward believed there was value in his shares in Genosys as well as a business opportunity from TMI as a seller of at least the TMI Second Generation NO Analyzer.

19.     Accordingly, on or about July 9, 2014, Mr. Woodward executed a manufacturing and licensing agreement with Health Innovations, Inc. ("Health Innovations"), a licensee of certain Genosys patents and wholly owned subsidiary of Genosys. One of the purposes of the agreement was to compensate TMI for development of the Second Generation NO System.

20.     In exchange for TMI's development of the Second Generation NO System, TMI would receive, among other things, fifty percent of all revenues from the sales of the Second Generation NO System, after TMI's development costs were recouped. As part of this agreement, TMI was also granted a license to Genosys patented technology. A copy of the Manufacturing License Agreement is attached hereto as Exhibit A.

21.     Based, at least in part, on the agreement with Health Innovations, TMI invested more than one million dollars in the development and testing of the Second Generation NO System.

22.     Bob Woodward collaborated with TMI contractors and employees to develop and manufacture the Second Generation NO System, all of whom made material contributions to the development of the Second Generation NO System without using any Genosys technology.

23.     In May of 2015, Jeff Kimball and David Bell, both of Syk, visited Bob Woodward at TMI's office claiming that Syk had acquired Genosys' patents and that TMI should sell the

Second Generation NO Analyzer that it had developed to Syk.  Bob Woodward declined the offer.  David Bell asked Bob Woodward to reconsider the offer or he "would be sorry."

24. On or about June 26, 2015, Mr. Woodward received a copy of a letter from Syk to Genosys asserting Syk's rights in all Genosys patented technology ("Genosys Patents") and demanding that all development activity related to any Genosys patented technology, including any NO analyzer technology, be terminated.  The letter also demanded, among other things, that TMI surrender all blueprints and technical specifications regarding development of the analyzer technology to Syk.  A copy of the cease and desist letter is attached hereto as Exhibit B.

25. Unfortunately, Praxair and several other potential customers of TMI were copied on Syk's letter to Genosys.   TMI continues to monitor the effect of the cease and desist letter that was sent to TMI's customers.  To the extent the communication from Syk to TMI's customers damages TMI, TMI reserves the right to seek relief from the Court for Syk's unlawful acts.

26. On or about July 9, 2015, TMI was served with a Complaint filed in the fourth judicial district court of Utah ("Utah State Complaint") against Genosys and TMI alleging, in part, that Syk was the owner of the Genosys Patents and that TMI was tortiously interfering with Syk's existing and prospective business opportunity.  A copy of the Utah State Complaint is attached hereto as Exhibit C.

### The March 26, 2015 and TMI's Provisional Patent Applications

27. TMI filed a provisional patent application with the United States Patent and Trademark Office for the Second Generation NO Analyzer on June 26, 2015.

28. TMI recently learned that a provisional patent application was filed by Pate Baird, PLLC in the name of Randy Miller and Ross Wille on March 26, 2015.

29. Syk has asserted that the subject matter contained in the TMI provisional patent application and the March 26, 2015 provisional patent application are "strikingly similar, if not identical" and that TMI could not have developed the Second Generation NO Analyzer technology "without direct input from Randy Miller and Ross Wille."

30. During the course of the development of the Second Generation NO Analyzer, Mr. Woodward shared information with Randy Miller and received input from Randy Miller regarding the inclusion of certain options TMI had developed for use in the Second Generation NO Analyzer. Upon information and belief, Randy Miller disclosed TMI's design of the Second Generation NO Analyzer to his attorney, resulting in the filing of the March 26, 2015 provisional patent application.

31. Upon information and belief, at least some of the material contained in the March 26, 2015 provisional patent application was derived from disclosures made by Bob Woodward to Randy Miller.

32. Upon information and belief, Syk asserts an ownership interest in the Second Generation NO Analyzer based on the allegation that Randy Miller and Ross Wille are co-inventors of the Second Generation NO Analyzer.

33. Based on the foregoing, a real and justiciable controversy exists as to who invented the technology contained in the March 26, 2015 provisional patent application and TMI's provisional patent application.

### TMI's Second Generation NO Analyzer Does Not Infringe
### Any Issued Patents Purportedly Owned by Syk

34. TMI has provided proto-types and made sales of the Second Generation NO Analyzer to third parties and desires to manufacture and sell the Second Generation NO Analyzer on a large scale.

35. Syk has claimed ownership of the Genosys Patents. As part of its claim to ownership of the Genosys Patents, including numerous issued patents, Syk has demanded that TMI cease and desist from "any activity related to the development, manufacture, or sale" of the Second Generation NO Analyzer.

36. In addition, Syk has alleged that it owns technology that is covered at least by a provisional patent application filed on March 26, 2015 and that the technology in that application is "strikingly similar, if not identical" to the description of the Second Generation NO Analyzer contained in TMI's provisional patent application.

37. While TMI believes its Second Generation NO Analyzer does not infringe any issued Genosys Patent, it has a reasonable fear and apprehension that it will be sued for patent infringement.

38. Accordingly, an actual and justiciable controversy exists between the parties with respect to the question of patent infringement at least because of Syk's demand that TMI cease and desist from sales and/or development of the Second Generation NO Analyzer based on Syk's purported ownership of the Genosys Patents.

## **FIRST CAUSE OF ACTION**

**(Non-Infringement of Patent 28 U.S.C. §§2201, 2202 and 35 U.S.C. §§ 271)**

39. TMI hereby incorporates by reference each and every preceding allegation of this Complaint as if set forth fully herein.

40. TMI has developed and sold the Second Generation NO Analyzer and desires to market and sell additional Second Generation NO Analyzers.

41. TMI has a reasonable fear and apprehension that it will be sued for patent infringement for the sale of the Second Generation NO Analyzers and as such an actual and justiciable controversy exists between the TMI and Syk.

42. TMI contends that the Second Generation NO Analyzers does not infringe any valid claims of any issued Genosys patents.

43. As such, TMI is entitled to an order declaring that the Second Generation NO Analyzer does not infringe any valid claims of any issued Genosys patents.

## SECOND CAUSE OF ACTION

**(Determination of Inventorship - 28 U.S.C. §§2201, 2202 and 35 U.S.C. § 101)**

44. TMI hereby incorporates by reference each and every preceding allegation of this Complaint as if set forth fully herein.

45. Upon information and belief, Syk has asserted that TMI's provisional patent application for the Second Generation NO Analyzer contains material that was invented by Randy Miller and Ross Wille. Syk further claims an ownership interest in material invented by Randy Miller and Ross Wille.

46. The novel material contained in TMI's provisional patent application related to the Second Generation NO Analyzer was invented solely by Bob Woodward, Robert Harding, and Susheel Chanda, all of whom work for TMI.

47. Accordingly, an actual and justiciable controversy exists between the parties with respect to the inventorship of subject matter contained within TMI's provisional patent application related to the Second Generation NO Analyzer.

**WHEREFORE**, it is respectfully requested that the Court enter judgment in favor of Plaintiff as follows:

A. That the Court enter judgment that the Second Generation NO Analyzer does not and will not infringe any issued patents that are purportedly owned by Syk.

B. That the Court enter judgment that novel material contained in TMI's provisional patent application related to the Second Generation NO Analyzer was invented solely by Robert Woodward, Robert Harding, and Susheel Chanda.

C. That the Court award TMI its costs and attorney's fees related to this action.

D. That TMI have such other and further relief as shall seem just and proper to the Court.

E. That the Court grant preliminary and permanent injunctive relief enjoining Syk its officers, directors, principals, agents, servants, employees, successors and assigns, and all others aiding, abetting, or acting in concert or active participation therewith, from directly or indirectly alleging that Randy Miller and/or Ross Wille invented TMI's Second Generation NO Analyzer.

Dated: July 30, 2015

                                                  _____
Peter M. de Jonge
Jed H. Hansen
Eric W. Westerberg
**THORPE NORTH & WESTERN, LLP**

*Attorneys for Plaintiff*
*Canyon Ridge Resources, LLC dba*
*Transamerican Medical Imaging*